158 N.J. Super. 384 (1978)
386 A.2d 413
MARIE ANDERSON, GENERAL ADMINISTRATRIX AND ADMINISTRATRIX AD PROSEQUENDUM OF THE ESTATE OF HENRY ANDERSON, DECEASED, PLAINTIFF-RESPONDENT AND CROSS-APPELLANT,
v.
HAROLD SOMBERG, ST. JAMES HOSPITAL, REINHOLD-SCHUMANN, INC., A CORPORATION, DEFENDANTS, AND THE LAWTON INSTRUMENT COMPANY, INC., A CORPORATION, DEFENDANT-APPELLANT AND RESPONDENT ON CROSS-APPEAL.
Superior Court of New Jersey, Appellate Division.
Argued March 7, 1978.
Decided April 10, 1978.
*387 Before Judges LYNCH, KOLE and PETRELLA.
Mr. Marc L. Dembling argued the cause for appellant, and respondent on cross-appeal, The Lawton Instrument Company, Inc. (Messrs. Lieb, Berlin & Kaplan, attorneys).
Mr. Ira J. Zarin argued the cause for respondent and cross-appellant Marie Anderson (Messrs. Zarin and Maran, attorneys).
Mr. Thomas F. Campion argued the cause for defendant Harold Somberg (Messrs. Shanley & Fisher, attorneys; Mr. Charles A. Reid, III, on the brief).
Mr. Edward E. Kuebler argued the cause for defendant St. James Hospital.
Mr. John I. Lisowski argued the cause for defendant Reinhold-Schumann, Inc. (Messrs. Morgan, Melhuish, Monaghan & Spielvogel, attorneys).
The opinion of the court was delivered by KOLE J.A.D.
*388 This appeal involves claims arising out of an accident which occurred on November 14, 1967, at which time decedent Henry Anderson (Anderson) was being operated on for the removal of an intravertebral disc by defendant physician, Harold Somberg, at defendant St. James Hospital (the hospital). The other defendants were The Lawton Instrument Co., Inc. (Lawton) and Reinhold-Schumann, Inc. (Reinhold), the manufacturer and distributor, respectively, of the surgical instrument used during the operation. Reinhold had sold the instrument to the hospital.
The case was first tried in June 1972. A jury returned a verdict of no cause of action in favor of all defendants.
The Appellate Division reversed the judgment and remanded for a new trial. 134 N.J. Super. 1 (App. Div. 1973). The Supreme Court affirmed. 67 N.J. 291 (1975), cert. den. 423 U.S. 929, 96 S.Ct. 279, 46 L.Ed.2d 258 (1975).
Anderson died on November 9, 1975, before the new trial on the remand. An amended complaint was filed substituting Marie Anderson, general administratrix and administratrix ad prosequendum of the estate of Henry Anderson, deceased, as plaintiff and adding a claim for relief for wrongful death.
The second jury trial commenced on July 6, 1976. The jury returned a verdict of no cause of action with respect to Somberg and the hospital and a verdict in favor of plaintiff in the amount of $40,000 against Lawton and Reinhold.
Lawton and Reinhold filed motions for a new trial. Reinhold also filed a motion for indemnification against Lawton. The judge denied the motions for a new trial and granted Reinhold's motion for a judgment requiring Lawton to indemnify Reinhold. It entered judgment in favor of plaintiff as administratrix of Anderson's estate against Lawton in the amount of $40,000, plus interest in the amount of $22,933, and court costs. At the end of plaintiff's case the judge had granted a motion for involuntary dismissal with respect to the wrongful death action.
*389 Lawton appeals. Plaintiff cross-appeals from the dismissal of the wrongful death claim.
On November 14, 1967, during the course of a laminectomy being performed by Somberg upon Anderson, one of the cups of a Lawton angulated pituitary rongeur broke off and became lodged in Anderson's back. Despite attempts to recover the cup it could not be removed; it was necessary for a second operation to be scheduled, at which time the object was in fact recovered. Much of the relevant factual background of these events has already been set forth in the reported opinions of this court and the Supreme Court.
At the second trial plaintiff sought to recover damages against Somberg for medical malpractice, against the hospital essentially for negligently maintaining and furnishing the instrument to Somberg without adequate inspection, and against Lawton and Reinhold for breach of implied warranty in the manufacture, inspection and testing of the instrument in question  i.e., strict liability in tort. At this trial much of the testimony in the previous trial was duplicated. The transcript of the testimony of decedent Anderson was read to the jury, as was the prior testimony of Dr. Graubard, plaintiff's expert, who had died prior to the 1976 trial.
The jury could reasonably find from the evidence of Anderson, Graubard and Somberg that the imbedded metal fragment caused medical complications and required further surgical interventions, and that as a result thereof Anderson suffered significant and permanent physical and neurological injuries.
According to Marie Anderson, Anderson's widow, following the second operation to remove the metal object, Anderson dragged his foot, suffered shortness of breath and chest pains and continued to have problems until the day he died. Dr. Saul Lieb, testifying for plaintiff, stated that there was a causal relationship between the death of Anderson due to a probable myocardial infarction and the chain of events *390 following the first operation, including the breaking of the rongeur, the subsequent surgical interventions and the pain and stress which Anderson suffered as a result thereof. He indicated that the second surgery triggered the deterioration of Anderson's cardiovascular condition. Miss Annie Hill, who met Anderson in 1972 and lived with him for 1 1/2 years before he died, testified that Anderson made no complaints regarding his feet and did not walk in a strange or unusual manner but that he did occasionally complain about back pain.
John Carroll, the chief metallurgist at United States Testing Company, testified on behalf of Lawton and was the only expert metallurgist to be produced in the case. He had examined the rongeur in question at the request of the hospital and had submitted it to various tests. He found it to be properly hardened and within the range anticipated for the composition of the instrument. In his opinion there was no evidence of faulty workmanship or inherent defects in the metal. His examination indicated there was a second crack in the proximity of the primary crack in the instrument. He stated that the second crack was not a residual from manufacture. However, in his written report, done at the time of his examination of the instrument, he indicated that it was impossible to tell when the second crack had formed; that it could have formed when the final failure occurred or could have been there before, and that if this crack was present during the final use of the instrument, it could have caused the ultimate failure of the instrument.
There is no merit to Lawton's claim that the court erred in instructing the jury with respect to the burden of proof and in stating that at least one of the defendants must be liable for Anderson's injuries. The court merely followed the law established by the opinion of the Supreme Court in this case, authored by Justice Pashman. That procedure *391 was correct. The law of this case is that set forth in the opinion of Justice Pashman.[1]
Although there was no majority opinion in the Supreme Court, the net result of its affirmance of the Appellate Division determination was that the matter was remanded for a new trial. We are here dealing not with the precedential value of an opinion by an equally divided Supreme Court (here 3-1-3) in another case. The question before us is whether the opinion of three members of the court should be the law of this case, when the result of that opinion was a remand for a new trial and that result was concurred in by another member of the court. Under such circumstances, the opinion of the three justices which resulted in the remand and retrial represents the law of the case on the retrial. See Kaku Nagano v. Brownell, 212 F.2d 262, 264 (7 Cir.1954); Sculthrop v. American Motors Corp., 7 Mich. App. 410, 151 N.W.2d 905 (Ct. App. 1967); In re Estate of LeDuc, 5 Mich. App. 390, 146 N.W.2d 711 (Ct. App. 1966). See also, Freeman v. Martin, 116 Ga. App. 237, 156 S.E.2d 511 (Ct. App. 1967). Compare *392 Higginbotham v. Higginbotham, 92 N.J. Super. 18, 22 and dissenting opinion at 36 (App. Div. 1966).
Similarly without merit is Lawton's assertion that the judge improperly instructed the jury as to its burden of proof with respect to exculpating itself from liability. Reliance is placed on an isolated portion of the charge relating to proximate cause.
The judge had instructed the jury as to the elements required to show liability for a breach of implied warranty against Lawton; and that Lawton was obligated to show by a preponderance of the evidence that it was free from such liability and had met its required burden of exculpation in that respect. Thereafter the judge stated that, "again" to exculpate itself, the burden on Lawton was to convince the jury by a preponderance of the evidence that "the occurrence was not the proximate result * * * of Lawton's alleged breach of implied warranty." It continued by saying:
I have already instructed you as to the various legal theories of liability that have been charged by the plaintiff against the defendants in this case, and you should bear these in mind in considering each defendant's liability in order to determine whether a particular defendant has or has not, as the case may be, met his or its required burden of exculpation.
It is contended that in the charge on proximate cause the judge in effect advised the jury that Lawton was liable by reason of its having placed a defective rongeur into the stream of commerce and that its exculpation would arise only if it negatived the existence of proximate cause. The judge, it is said, failed to inform the jury that "exculpation could include negation of one of the elements of" breach of implied warranty  e.g., proof that there was no defect in manufacture or design and that the product was reasonably fit for use as a rongeur. Thus, it is argued, the judge took from the jury consideration of the exculpatory evidence of its expert, Carroll, that the instrument was not defective *393 and was reasonably fit for use as a rongeur; limited the jury's determination solely to whether Lawton had sustained the burden of proving that its breach of implied warranty was not a proximate cause of Anderson's injuries, and thereby denied Lawton a fair trial.
The alleged erroneous instruction as to proximate cause must be read in the context of the entire charge. So viewed, the charge clearly and correctly set forth the principles of law pertinent to the issues in this case and adequately informed the jury as to how to determine whether Lawton had exculpated itself from liability. See State v. Wilbely. 63 N.J. 420 (1973); Kaplan v. Haines, 96 N.J. Super. 242, 251-255 (App. Div. 1967), aff'd o.b. 51 N.J. 404 (1968). Under the complete charge the jury was free to weigh the credibility of Lawton's expert, to believe or reject his testimony as to the rongeur, and to determine whether Lawton actually sustained its burden of proving that that instrument was not defective and was reasonably fit for use as a rongeur.
Lawton argues that the judge erroneously excluded deposition testimony of Sister Macary DePazzi, indicating that 50 to 55 laminectomies were performed at the hospital between 1962, when the rongeur was purchased, and 1967, when the incident occurred.
The judge ruled that this evidence was not relevant. He predicated his ruling on the ground that the rongeur in question was not purchased until August 26, 1963, and that the Supreme Court, based on the deposition of Sister Carmel Joseph, had found that the rongeur was used about five times a year and thus had been used about 20 times before the operation. It appears that the same deposition testimony  that it was used about five times a year  was before the jury in the present trial. The judge indicated that he would have allowed the evidence if other counsel would agree. When no agreement was forthcoming, Lawton withdrew its offer of proof "to save everybody a lot of time."
*394 Lawton argues the evidence was relevant, as each defendant was obligated to exculpate itself. It claims that the proffered proof would tend to show previous use and the possibility of previous weakening of the instrument in its prior use or cumulative misuse.
There is no indication in the record that the rongeur that broke during the surgery on Anderson was used in any other laminectomy mentioned in the deposition of Sister DePazzi. Thus, the offered evidence would not have been probative of the extent of the use of this rongeur  the fact Lawton sought to establish thereby. Hence, it was irrelevant. Evid. R. 1(2).[2]
In any event, if the refusal to admit this deposition testimony was error, it was plainly harmless beyond a reasonable doubt. Evidence with respect to the number of times the rongeur in question was used and the time span of its use was before the jury. R. 2:10-2. Moreover, Lawton effectively withdrew its offer of the deposition testimony.
Lawton claims to have been denied a fair trial because the judge would not permit it to read to the jury answers given by Somberg to interrogatories that named as a witness an expert metallurgist, not called by Somberg at the trial. Lawton wanted to read only the portion of the answers naming Somberg's expert and not the contents of that expert's report attached thereto. The judge ruled that the interrogatory answer sought to be read would mislead or confuse the jury, relying on Evid. R. 4.
Lawton argues that the failure of Somberg and the other defendants, as well as plaintiff, to produce expert metallurgic proof was relevant to the issue of exculpation from liability, *395 since it was endeavoring to shift the blame to the other defendants.
The ruling of the judge on this issue was discretionary. We find no abuse of such discretion. There is no indication of the kind of evidence that Somberg's proposed expert would have produced; that he had knowledge superior to that of Carroll, who testified for Lawton, regarding the manufacture and design of the rongeur, or that he was not equally available to Lawton. Under these circumstances the judge properly could hold that the mere fact that Somberg named an expert who did not testify was inadmissible. What Lawton was seeking to do constituted an inappropriate endeavor to have the jury draw an adverse inference against Somberg simply because he chose not to use at trial a witness he had earlier identified as a potential expert witness. See State v. Clawans, 38 N.J. 162 (1962); Wild v. Roman, 91 N.J. Super. 410 (App. Div. 1966). See also, Hill v. Newman, 126 N.J. Super. 557, 564 (App. Div. 1973), certif. den. 64 N.J. 508 (1974).
In any event, in its summation Lawton took full advantage of the failure of the other parties to call any metallurgic experts. It stated that Carroll had been employed by the hospital to examine the instrument; that his testimony as to lack of defect and proper workmanship with respect to the instrument was unrebutted, and that nobody had come forward to say that he was wrong. It further informed the jury that it had produced exculpatory testimony; that it "put on the only metallurgist in this case, and he is of the opinion that there is not a defect in manufacture and that the instrument was proper for the use that it was intended," and that it had exculpated itself.
Lawton contends that the judge improperly denied its motion for an involuntary dismissal of the claim against it or a judgment in its favor at the conclusion of the proofs. It argues that its expert's testimony indicated that there was no defect in design, manufacture or workmanship with respect to the rongeur; that no other expert testified, and *396 that there was no other evidence on which the jury could reasonably conclude that there was any such defect. The judge denied the motion on the ground that the expert's testimony was inconclusive in nature and thus presented a jury question as to its credibility.
The testimony of Lawton's expert, Carroll, was indeed not unequivocal. He did say that a second crack found in the rongeur could have been the reason for the failure of the instrument and that it was not a residual from manufacture. However, he also had indicated that it was impossible to tell when the second crack had formed; that this crack might have been a residual from manufacture, and if such a crack was present in the instrument prior to its final use, it could have been the principal cause of the ultimate failure.
Even though neither plaintiff nor any other defendant produced expert testimony and there was no conflict among experts, the burden of proof to exculpate itself was on Lawton. We are satisfied that, applying the standard applicable on a motion of this kind, reasonable minds could differ as to the inference to be drawn from Lawton's expert testimony and the lack of other expert evidence. Denial of the motion thus was proper. Dolson v. Anastasia, 55 N.J. 2, 5 (1969). See Sabloff v. Yamaha Motor Co. Ltd., 59 N.J. 365, 366 (1971); Savoia v. F.W. Woolworth Co., 88 N.J. Super. 153, 162 (App. Div. 1965); Mims v. United States, 375 F.2d 135, 140 (5 Cir.1967).
Lawton asserts that the judge improperly entered a judgment of indemnification in favor of Reinhold. It contends that Reinhold did not meet the burden of exculpating itself from liability, as evidenced by the jury verdict against both Reinhold and Lawton, and that, therefore, there was no legal basis for indemnifying Reinhold. It further argues that in ordering indemnification, the judge usurped the jury's function and ruled contrary to the principle that each defendant was required to exculpate itself. The contention is without merit.
*397 Lawton was the manufacturer and sold the rongeur to Reinhold, the distributor, which in turn sold it to the hospital on August 26, 1963. They were both found liable for breach of implied warranty or strict liability in tort.
If, as appears, Lawton was, and Reinhold was not, a wrongdoer in connection with the defect in the rongeur while it was in its control, Reinhold was entitled to indemnity against Lawton for the full amount of the damages assessed against it. Newmark v. Gimbels, Inc., 54 N.J. 585, 600 (1969); Adler's Quality Bakery, Inc. v. Gaseteria, Inc., 32 N.J. 55, 79-81 (1960); Arcell v. Ashland Chemical Co., Inc., 152 N.J. Super. 471, 488-494 (Law Div. 1977); Ruvolo v. U.S. Steel Corp., 139 N.J. Super. 578, 584-585 (Law Div. 1976).
The proofs indicate that Reinhold merely placed the order for the rongeur with Lawton, opened the package, checked the contents for a match with the catalog number and forwarded the instrument to the hospital. There is no evidence that any defect in the instrument arose while it was in Reinhold's control. Lawton's expert, Carroll, testified that the second crack found in the rongeur was not visible to the naked eye. Thus, even if Reinhold had fully inspected the instrument after receiving it from Lawton, it plainly would not have discovered this defect. Moreover, if the jury had decided, on the evidence before it, that Reinhold was responsible for the defect while the instrument was in its possession, the verdict would only have been against Reinhold and not also against Lawton.
Under these circumstances the judge properly found that the liability of Reinhold, the blameless distributor, was predicated upon the liability of the manufacturer, Lawton, and therefore the latter was required to indemnify Reinhold.
Lawton next contends that the judge improperly awarded prejudgment interest to the plaintiff.
Prejudgment interest in tort actions, including products liability claims, is mandatory pursuant to R. 4:42-11(b). However, the rule provides "that in exceptional cases the *398 court may suspend the running of such prejudgment interest."
Lawton asserts that exceptional circumstances exist in this case, since initially there was a verdict of no cause of action in June 1972, which was followed by subsequent appeals. Thus, it states that the rationale of the prejudgment interest rule  that it is a payment for the use of money by a defendant and will hopefully induce prompt defense consideration of settlement possibilities, Busik v. Levine, 63 N.J. 351, 358-359 (1973), app. dism., 414 U.S. 1106, 94 S.Ct. 831, 38 L.Ed.2d 733 (1973)  does not apply. We do not agree.
Here, the interest owed accumulated during the time consumed by the appellate process, resulting in the change of law by the Supreme Court. No special equities favor Lawton. Indeed, a mistaken view of the law does not toll a normal obligation to pay interest from the due date. Kamens v. Fortugno, 108 N.J. Super. 544, 553 (Ch. Div. 1970). Cf. Rova Farms Resort v. Investors Ins. Co., 65 N.J. 474, 503-507 (1974). Since Lawton had the use of the money during the entire period of this litigation, the award of prejudgment interest was proper. See Kotzian v. Barr, 152 N.J. Super. 561 (App. Div. 1977).
The trial judge held that the amount of damages awarded plaintiff was not excessive. Lawton claims that this ruling was erroneous. From our review of the record, in the light of applicable law, we are satisfied that there is no substance to this claim. Baxter v. Fairmont Food Co., 74 N.J. 588 (1977); Leimgruber v. Claridge Associates, Ltd., 73 N.J. 450 (1977); Sweeney v. Pruyne, 67 N.J. 314 (1975).
Lawton's final contention is that the "court improperly submitted a jury verdict form to the jury." The form requested the jury to state whether it found "a cause of action" against each named defendant. It was instructed that an affirmative answer would mean a judgment of liability against that defendant. It is argued that, under the law applicable *399 to this case, the interrogatories to the jury should have inquired directly whether each specific defendant had exculpated itself or himself and that the verdict form submitted did not "clearly * * * require the jury to do what the Supreme Court mandated * * *."
This contention lacks substance. The interrogatories submitted to the jury constituted an appropriate exercise of discretion by the judge. The jury was fully apprised in the charge with respect to the governing law as established by the Supreme Court. The interrogatories plainly were predicated on that charge. They in no wise prejudiced Lawton's rights. See R. 4:39-1; Nylander v. Rogers, 41 N.J. 236, 240 (1963), aff'g 78 N.J. Super. 566, 569 (App. Div. 1963); Turon v. J & L Construction Co., 8 N.J. 543, 551 (1952); Hill v. Macomber, 103 N.J. Super. 127, 138 (App. Div. 1968).
On her cross-appeal plaintiff claims that the trial judge erred in granting a motion for an involuntary dismissal of her wrongful death action at the close of her case.
The question of causal relationship between the tortious conduct complained of in this case and Anderson's death revolves essentially around the testimony of Dr. Lieb, plaintiff's witness. He was the only expert witness testifying as to the cause of death.
We are satisfied that Dr. Lieb's testimony, and the reasonable inferences therefrom, viewed most favorably to plaintiff, support the judge's conclusion that they could not sustain a judgment in plaintiff's favor on the wrongful death claim. We affirm the dismissal of that claim essentially for the reasons given by the trial judge.
We agree that the underlying arteriosclerotic condition that Lieb attributed to Anderson, who died at age 47, was predicated on an assumption that Lieb made without any proof thereof in the record or facts relating thereto within his knowledge, even in the light of his expertise. In essence, he assumed that such a condition is simply an affliction of growing older and applied that assumption to Anderson, *400 without any basis therefor. We note that Lieb knew of no autopsy that had been performed on Anderson, and he relied on the cause of death stated in the death certificate  probable myocardial infarction. His conclusion that the breaking of the rongeur and the second operation, with the resultant pain and stress, triggered the deterioration of Anderson's underlying cardiovascular problems and reacted adversely thereon, is predicated on sheer conjecture. To have permitted the jury to determine, on these proofs, whether Anderson's death from the claimed myocardial infarction was causally related to the surgeries performed a substantial time prior thereto, would have improperly authorized "the jury to reach an answer through guess or speculation." Germann v. Matriss, 55 N.J. 193, 209 (1970). The judge's dismissal of the wrongful death claim under these circumstances is unassailable. Dolson v. Anastasia, supra; R. 4:37-2(b). See Ciuffo v. Middlesex General Hosp., 146 N.J. Super. 476 (App. Div. 1977); Parker v. Goldstein, 78 N.J. Super. 472 (App. Div.), certif. den. 40 N.J. 225 (1963). See also, Renner v. R.L. Tool & Die Co., 57 N.J. 190 (1970); Walck v. Johns-Manville Products Corp., 56 N.J. 533 (1970); Schiffres v. Kittatinny Lodge, Inc., 39 N.J. 139 (1963). Cf. United Rental Equip. Co. v. Aetna Life & Cas. Ins. Co., 74 N.J. 92, 101-102 (1977); Biro v. Prudential Ins. Co. of America, 110 N.J. Super. 391, 402 (App. Div.), rev'd on dissenting opinion, 57 N.J. 204 (1970).
Affirmed.
NOTES
[1] Justice Pashman's opinion represented the views of three members of the court. Justice Jacobs concurred in the result but voted to affirm on the majority opinion of the Appellate Division. The latter opinion, apparently following NOPCO Chemical Div. v. BlawKnox Co., 59 N.J. 274 (1971), held that the jury should have been charged that, under the peculiar circumstances of this case, the occurrence itself indicated liability on the part of one or more defendants and that "the burden should be shifted to defendants as they are more likely to possess knowledge of the cause of the accident." It stated that each defendant had the duty to come forward with explanatory evidence. Although we believe that the majority opinion of the Appellate Division did not place the burden of proof of exculpation on each defendant, it appears that the contrary interpretation may have been placed on it by Justice Pashman's opinion. See 67 N.J. at 297-298. But see 67 N.J. at 300.

The remaining three justices dissented and would have reversed the Appellate Division judgment, thus reinstating the jury verdict and judgment of no cause of action against all of the defendants.
[2] Additionally, there is nothing in the record establishing the conditions for admissibility of this deposition against the hospital, even if it were relevant, under R. 4:16-1(b). See R. 4:16-2. There was no proof that she was an agent of the hospital or a person designated by it to testify on its behalf.