714 A.2d 958 (1998)
314 N.J. Super. 293
Joseph P. ABBAMONT, Jr., Plaintiff-Appellant,
v.
PISCATAWAY TOWNSHIP BOARD OF EDUCATION, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued April 27, 1998.
Decided July 27, 1998.
*959 Frank M. Ciuffani, Woodbridge, for plaintiff-appellant (Wilentz, Goldman & Spitzer, attorneys; Mr. Ciuffani, of counsel; Mr. Ciuffani and Christopher W. Hager, on the brief).
David B. Rubin, Metuchen, for defendant-respondent.
Before Judges PETRELLA, SKILLMAN and EICHEN.
The opinion of the court was delivered by SKILLMAN, J.A.D.
This Conscientious Employee Protection Act (CEPA), N.J.S.A. 34:19-1 to -8, action brought by an industrial arts teacher formerly employed by defendant Piscataway Township Board of Education (the Board) is before us for the third time. In the first appeal, we reversed a pretrial order denying the Board's motion to strike plaintiff's jury trial demand and concluded that there was no right to trial by jury in a CEPA action. Abbamont v. Piscataway Township Bd. of Educ., 238 N.J.Super. 603, 570 A.2d 479 (App.Div.1990). Subsequently, the Legislature enacted an amendment to N.J.S.A. 34:19-5 to allow jury trials in CEPA actions, which was made applicable to pending cases, L. 1990, c. 12, §§ 4, 5, following which the trial court entered an order reinstating plaintiff's jury trial demand.
Before trial, the trial court entered a procedural order which provided, among other things, that "the issue of punitive damages shall be severed for purposes of trial, to be determined by the Court in a subsequent proceeding, without a jury, should plaintiff Abbamont prevail on the issue of liability" and that "the factual issues underlying plaintiff's claim for reinstatement be submitted to the jury by suitably framed interrogatories, with the ultimate determination on this equitable remedy being made by the Court."
The case was tried over seven days before a jury, which returned a verdict finding that the Board violated CEPA in failing to renew plaintiff's employment contract for the 1988-89 school year and awarding him $60,000 in compensatory damages. The trial court subsequently granted the Board's motion to set aside the verdict and dismiss the complaint on the ground that the evidence did not establish that the Board had violated CEPA.
On appeal, this court concluded unanimously that the trial court erred in determining that plaintiff failed to prove a violation of CEPA. Abbamont v. Piscataway Township Bd. of Educ., 269 N.J.Super. 11, 20-28, 634 A.2d 538 (App.Div.1993). In addition, by a two-to-one vote, this court rejected the Board's argument that a claim for punitive damages under CEPA is not maintainable *960 against a public entity. Id. at 28-31, 634 A.2d 538. We also concluded that plaintiff's claim for punitive damages was triable before a jury, rather than the trial court. Ibid.[1] Accordingly, we reinstated the verdict for $60,000 in compensatory damages and "remanded to the trial court for a jury trial on the issue of punitive damages." Id. at 33, 634 A.2d 538. For the guidance of the trial court on the remand, we noted that
A greater threshold than mere negligence should be applied to measure employer liability for punitive damages; they are to be awarded when the wrongdoer's conduct is especially egregious but "only in the event of actual participation by upper management or willful indifference." Lehmann [v. Toys `R' Us, Inc.], supra, 132 N.J. [587] at 624-25, 626 A.2d 445 [1993].
On remand, we leave it to the court to determine what facts are necessary for the plaintiff to hold the defendant liable for punitive damages, following the standard for liability for punitive damages set forth in Lehmann, Id. at 624-25, 626 A.2d 445.
[Id. at 31, 634 A.2d 538.]
Judge Petrella dissented from the part of the majority's decision which concluded that a punitive damage claim under CEPA may be maintained against a public entity.
Except for the part of the majority decision of this court dealing with the maintainability of a punitive damage claim under CEPA against a public entity, the Supreme Court affirmed unanimously. Abbamont v. Piscataway Township Bd. of Educ., 138 N.J. 405, 413-25, 650 A.2d 958 (1994). The Court divided three-to-three with respect to the maintainability of plaintiff's claim for punitive damages, thereby affirming this court's majority decision remanding the punitive damages claim for trial. Id. at 426-32, 435-36, 650 A.2d 958. Speaking for the prevailing three justices, Justice Handler also agreed with this court's majority that just as the Court in Lehmann v. Toys `R' Us, Inc., 132 N.J. 587, 624-26, 626 A.2d 445 (1993) had "imposed a higher standard for punitive damages" in actions under the Law Against Discrimination (LAD), in CEPA actions, "`the employer should be liable for punitive damages only in the event of actual participation by upper management or willful indifference.' " Abbamont, supra, 138 N.J. at 419, 650 A.2d 958 (quoting Lehmann, supra, at 625, 626 A.2d 445).
Notwithstanding our mandate that "remanded [the case] to the trial court for a jury trial on the issue of punitive damages," which the Supreme Court had affirmed by an evenly divided vote, the trial court upon remand granted the Board's motion to dismiss plaintiff's punitive damages claim. The court concluded that any award of punitive damages against a board of education must be predicated upon the conduct of its members, rather than upper level management, and that the record did not contain "the slightest shred of evidence or any inference that could arise from the evidence which would indicate that any member of the Board had any actual knowledge or any constructive knowledge of the hidden, illegal and improper motive now attributed" to the Superintendent of Schools, Burt Edelchick, and the principal of the school in which plaintiff taught, Edward McGarigle. The court also refused to consider evidence that subsequent to the initial decision not to renew his employment contract, plaintiff brought information to the Board's attention concerning Edelchick's and McGarigle's unlawful motive for not recommending his reemployment.
Subsequently, plaintiff moved for reinstatement to his former position as an industrial arts teacher in the Piscataway School District along with retroactive seniority, tenure and fringe benefits. The court denied this motion in a written decision, which relied in substantial part upon the fact that plaintiff is now a tenured industrial arts teacher in another school district where he earns a higher salary than he would be receiving if he were still employed in Piscataway.
After the passage of a substantial additional period of time, plaintiff moved for an award of $633,356.95 in attorneys' fees and costs. In a written opinion issued on March *961 21, 1997, the trial court awarded plaintiff $169,450.85 in attorneys' fees and costs. This award included $24,000 for attorneys' fees incurred in connection with the Board's appeal to the Supreme Court.
On his appeal from the various orders entered subsequent to the remand from the Supreme Court, plaintiff argues that the trial court erred in dismissing his claim for punitive damages and in denying his motion for an order requiring the Board to reinstate him.[2] Plaintiff also argues that the attorneys' fees awarded by the court were inadequate. The Board has filed a cross appeal from the award of $24,000 for the attorneys' fees charged in connection with the Board's appeal to the Supreme Court.
We conclude that the trial court erred in dismissing plaintiff's claim for punitive damages and again remand for a trial on this claim. We also conclude that the court did not abuse its discretion in denying plaintiff's motion for immediate reinstatement but that it should have ordered the Board to appoint plaintiff to the next available position in the industrial arts department. Because the case must be remanded for further trial proceedings which may result in an award of additional attorneys' fees, we conclude that review of the attorneys' fee award would be premature.

I
The threshold issue presented by this appeal is whether the controlling law following the remand is this court's majority opinion or Justice Handler's prevailing opinion in the evenly divided Supreme Court. This point is significant because although we may disagree with a decision of another panel of this court under some circumstances,[3]see Outland v. Monmouth-Ocean Educ. Serv. Comm'n, 295 N.J.Super. 390, 397, 685 A.2d 68 (App.Div.1996), rev'd on other grounds, 154 N.J. 531, 713 A.2d 460 (1998), we are obviously bound by a decision of the Supreme Court, Rodriguez v. Cordasco, 279 N.J.Super. 396, 405, 652 A.2d 1250 (App. Div.), certif. denied, 142 N.J. 451, 663 A.2d 1358 (1995).
The Board contends that "[a]n affirmance by an evenly divided Court ... is not a decision at all, but a non-decision inasmuch as the two opposing views, each entitled to equal respect, cancel each other out." The Board relies upon Neil v. Biggers, 409 U.S. 188, 192, 93 S.Ct. 375, 378-79, 34 L. Ed.2d 401, 407 (1972), which states:
"If the judges are divided, the reversal cannot be had, for no order can be made. The judgment of the court below, therefore, stands in full force. It is, indeed, the settled practice in such case to enter a judgment of affirmance; but this is only the most convenient mode of expressing the fact that the cause is finally disposed of in conformity with the action of the court below, and that that court can proceed to enforce its judgment. The legal effect would be the same if the appeal, or writ of error, were dismissed." Durant v. Essex Co., 7 Wall 107, 112, 19 L.Ed. 154 (1869). Nor is an affirmance by an equally divided Court entitled to precedential weight.
See also Ohio ex rel. Eaton v. Price, 364 U.S. 263, 80 S.Ct. 1463, 4 L. Ed.2d 1708 (1960).
The practice rule set forth in Neil v. Biggers,that an affirmance by an equally divided court is not entitled to any precedential weighthas been followed in nearly every jurisdiction which has addressed the question. See, e.g., Lee v. Maryland, 69 Md.App. 302, 517 A.2d 774, 780-81 (1986), aff'd, 311 Md. 642, 537 A.2d 235 (1988); Churchill v. Pearl River Basin Dev. Dist., *962 619 So.2d 900, 904 (Miss.1993); see generally, Robert Laurence, A Very Short Article on the Precedential Value of the Opinions from an Equally Divided Court, 37 Ark. L.Rev. 418, 426 (1983). In fact, the Third Circuit Court of Appeals has applied this rule in a case involving the stare decisis effect of Justice Handler's opinion in this case. Gares v. Willingboro Township, 90 F.3d 720, 725 (3d Cir.1996). Therefore, although we have not been able to locate any New Jersey case which is directly on point, we have no doubt that our courts would follow the majority rule that an affirmance by an equally divided court is not entitled to any precedential weight.
However, the issue before us is not whether the Supreme Court's decision should be accorded precedential weight in another case but rather whether it represents the controlling law in this case. This issue is governed by the "law of the case" doctrine rather than the principle of stare decisis. Anderson v. Somberg, 158 N.J.Super. 384, 390-91, 386 A.2d 413 (App.Div.), certif. denied, 77 N.J. 509, 391 A.2d 522 (1978). Under this doctrine, a decision by an equally divided court becomes the law of the case, which is binding upon all lower courts, even though it may have no precedential weight in other cases. Kaku Nagano v. Brownell, 212 F.2d 262 (7th Cir.1954); Anderson v. Somberg, supra, 158 N.J.Super. at 391, 386 A.2d 413; In re Estate of LeDuc, 5 Mich. App. 390, 146 N.W.2d 711, 713 (1966).
In Kaku Nagano the Seventh Circuit reviewed a case with a procedural history similar to this one. The court of appeals' original decision remanding the case to district court had been affirmed by the Supreme Court of the United States by an equally divided vote. McGrath v. Kaku Nagano, 342 U.S. 916, 72 S.Ct. 363, 96 L. Ed. 685 (1952). On a second appeal to the circuit court following the remand, the appellant raised the same argument the circuit court had rejected in its original decision, contending that another Supreme Court opinion issued the same day as the Court's affirmance by an evenly divided vote in Kaku Nagano indicated the full Court would decide the issue the opposite way. Kaku Nagano, supra, 212 F.2d 262-63. However, the circuit court rejected this argument, stating that "[a] judgment affirmed by a divided court is as conclusive and binding upon the parties as if rendered upon the concurrence of all participating judges upon every question involved in the case." Id. at 264.
In Anderson v. Somberg, supra, the court followed the "law of the case" rationale of Kaku Nagano in a case where a decision of this court reversing a no cause verdict and remanding for a new trial was affirmed by the Supreme Court by a 3-1-3 vote, with four Justices concurring in the result. On the remand, plaintiff obtained a verdict against some defendants. On appeal, those defendants argued that the trial court erred in following the instructions set forth in an opinion which only represented the views of three Justices. We rejected this argument, stating that:
Although there was no majority opinion in the Supreme Court, the net result of its affirmance of the Appellate Division determination was that the matter was remanded for a new trial. We are here dealing not with the precedential value of an opinion by an equally divided Supreme Court (here 3-1-3) in another case. The question before us is whether the opinion of three members of the court should be the law of this case, when the result of that opinion was a remand for a new trial and that result was concurred in by another member of the court. Under such circumstances, the opinion of the three justices which resulted in the remand and retrial represents the law of the case on the retrial.
[Id. at 391, 386 A.2d 413.]
Similarly, we are satisfied that Justice Handler's opinion represents the law of this case, and that it is binding upon both the trial court and this court.

II
The essential premise of the trial court's opinion dismissing plaintiff's punitive damages claim was that an award of punitive damages could only be based upon the conduct of the Board itself and not upon the *963 conduct of any of its employees including the Superintendent of Schools. The court's basic finding upon which the dismissal of the punitive damages claim was predicated was that "[n]owhere, in the record of the trial below, was there the slightest shred of evidence or any inference that could arise from the evidence which would indicate that any member of the Board had any actual knowledge or any constructive knowledge of the hidden, illegal and improper motive now attributed... to ... McGarigle and Edelchick in recommending no vote of tenure." The court amplified the rationale of its decision dismissing the punitive damages claim in its subsequent opinion relating to plaintiff's motion for reinstatement:
Review of the trial transcript will reveal that plaintiff did not produce one witness or piece of evidence that the Board (or any member thereofnone of whom were named as defendants) ever had knowledge of, much less acquiesced to or approved of the retaliatory motives of their subordinates.
The trial court's view that punitive damages may be imposed upon a board of education solely for the wrongful conduct of its members is inconsistent with the Supreme Court's decision in this case. The Court clearly stated that the Board, as plaintiff's employer, could be liable for punitive damages based upon a showing "of actual participation by upper management or wilful indifference" to especially egregious wrongful conduct. 138 N.J. at 419, 650 A.2d 958 (quoting Lehmann v. Toys `R' Us, Inc., supra, 132 N.J. at 625, 626 A.2d 445); see also Gares v. Willingboro Township, supra, 90 F. 3d at 728; Rendine v. Pantzer, 141 N.J. 292, 314-15, 661 A.2d 1202 (1995); Maiorino v. Schering-Plough Corp., 302 N.J.Super. 323, 354-55, 695 A.2d 353 (App.Div.), certif. denied, 152 N.J. 189, 704 A.2d 19 (1997). The Court also expressly stated that CEPA "draws no distinctions between private and public employers." 138 N.J. at 420, 650 A.2d 958. And with specific reference to plaintiff's punitive damages claim, the Court stated that "[t]he Legislature could reasonably have concluded that punitive damages under CEPA would constitute a stringent corrective and potent deterrent against egregious wrongdoing by upper-level supervisory government officials." Id. at 429, 650 A.2d 958. Consequently, we perceive no basis for the trial court's conclusion that the members of a board of education are its only "upper level supervisory officials." To the contrary, it is not a board's members but rather the superintendent of schools and other upper level administrators who exercise a board's supervisory authority, subject to the board's oversight and ultimate control. Therefore, we are satisfied that just as a private corporation may be liable for punitive damages for the conduct of its president and other high level executives, see Lehmann v. Toys `R' Us, Inc., supra, 132 N.J. at 624-25, 626 A.2d 445, a board of education may be liable for punitive damages for the egregious misconduct of its superintendent of schools and other high level administrators.
The trial record in this case contains ample evidence from which a jury could find actual participation by upper management or wilful indifference to especially egregious wrongful conduct in violation of CEPA. Viewing the evidence in the light most favorable to him, plaintiff attempted over a period of two-and-a-half years to alleviate unhealthy and dangerous conditions in a public school classroom, but his supervisors not only rebuffed him but also recommended the non-renewal of his employment contract because of his complaints. In addition, the evidence would support a finding that Superintendent Edelchick, Assistant Superintendent and Board Secretary Vander Vliet, Principal McGarigle and Industrial Arts Supervisor Papariello, were all participants in this retaliatory action. See Abbamont, supra, 138 N.J. at 422-23, 425, 650 A.2d 958. Therefore, the Board has not demonstrated any basis for reconsideration of the Court's previous conclusion that plaintiff's punitive damages claim presents an issue for the jury.

III
We turn next to the denial of plaintiff's motion for an order reinstating him to his former position as an industrial arts teacher in the Piscataway school district.
*964 The Supreme Court held in this case that the same standards which govern remedies in actions brought under the LAD also apply to CEPA actions. 138 N.J. at 416-21, 650 A.2d 958.[4] As in a LAD case, an employer found to have violated CEPA is "strictly liable for equitable relief in the nature of reinstatement." Id. at 418, 650 A.2d 958. Therefore, we look to LAD cases in determining the circumstances under which a court may decline to order the reinstatement of an employee terminated in violation of CEPA.
In Granziel v. City of Plainfield, 279 N.J.Super. 104, 108, 652 A.2d 227 (App.Div.), remanded for reconsideration on unrelated issues, 142 N.J. 513, 665 A.2d 1106 (1995), we stated that "where feasible, reinstatement is an appropriate remedy" under the LAD. In addition, we noted that
There are two prevailing methods to accomplish reinstatement: "bumping," which requires the displacement of an incumbent employee in order to place the wronged employee in a position to which he is entitled; and the "rightful place" theory, which requires the wronged employee to await the next job promotion, but compensates him financially at a higher salary for that waiting period.
[Id. at 108-09, 652 A.2d 227.]
Based upon an analysis of federal case law, we concluded that the "rightful place" method of reinstatement is most appropriately utilized when "the wronged employee [has] the benefit of continued employment and job security, and thus it [is] not improper to require him to await promotion or seniority rights upon the occurrence of the next job opening." Id. at 112, 652 A.2d 227; see also Terry v. Mercer County, 86 N.J. 141, 154, 430 A.2d 194 (1981).
In denying plaintiff's motion for reinstatement, the trial court relied upon the fact that plaintiff "has already received a $60,000 judgment plus interest and costs," that plaintiff now has a tenured teaching position in another school district at a higher salary than he would be earning in Piscataway, that plaintiff's reinstatement could result in the displacement of another tenured teacher, and that there would be a "very real probability of continued animosity between the parties" if plaintiff were reinstated. We conclude that the trial court did not abuse its discretion in declining to require the Board to immediately offer plaintiff reinstatement which would require the displacement of another tenured teacher but that the court erred in not requiring the Board to offer plaintiff appointment to the next available position in the industrial arts department.
Initially, we reject the Board's argument that plaintiff waived his right to seek reinstatement by asserting a claim for loss of future earnings. The trial court refused to submit any claim for future wage loss to the jury. Hence, we must assume that the $60,000 compensatory damage award was solely for lost wages for the period between when plaintiff was terminated by Piscataway and when he was hired by another school district and for emotional distress.[5] Therefore, there is no danger that an order requiring plaintiff's reinstatement would result in a duplication of remedies. Compare Granziel, supra, 279 N.J.Super. at 107-08, 113, 652 A.2d 227.
The trial court erred insofar as it relied upon the "very real probability of continued animosity" between the parties if plaintiff were reinstated to his former position. With respect to this factor, the court stated:
This Board, even with changing membership, has continued to resist vigorously Abbamont's claims since 1989. They have spent considerable education financial resources to oppose him in numerous pretrial motions, a trial, two proceedings in the Appellate Division and one argument before the Supreme Court. We are now in the post-trial post-appeal stage. To aver *965 that no animosity would be engendered by Abbamont's forced return would be Alice through the Looking Glass.
However, in urging a court to deny the reinstatement of an employee who has been wrongfully terminated, an employer may not rely upon animosity between the parties which is solely the product of the employer's violations of CEPA and the employee's efforts to vindicate his or her rights under this legislation. See Lander v. Lujan, 888 F.2d 153, 158 (D.C.Cir.1989) ("Nor do we understand how an employer's claim that his workplace would be disrupted could possibly defeat the victim's entitlement to complete relief when, after all, the employer's intentional discrimination created the disturbance by harming the plaintiff."); Gallo v. John Powell Chevrolet, Inc., 779 F.Supp. 804, 815 (M.D.Pa.1991) ("Allowing the probability of hostility to negate reinstatement would give in to the attitudes which brought about the discrimination in the first place, an intolerable result."). In any event, due to the retirements of Superintendent Edelchick, Assistant Superintendent and Board Secretary Vander Vliet and Principal McGarigle, the persons most directly involved in plaintiff's termination are no longer employed by the Board. Consequently, there is no factual foundation for the trial court's conclusion that the alleged personal animosity between plaintiff and his superiors would interfere with his job performance if he were reinstated.
Moreover, disregarding this factor, we perceive no basis for completely denying plaintiff a reinstatement remedy. As previously discussed, reinstatement should be granted "where feasible" upon a finding of a violation of CEPA. Granziel, supra, 279 N.J.Super. at 108, 652 A.2d 227. The mere fact that plaintiff obtained an award of compensatory damages for lost wages for the period between his termination by the Board and his hiring by another district and that he is being paid a higher salary in the new position are not by themselves adequate grounds for denying all relief, especially if, as appears in this case, plaintiff stands in some jeopardy of losing his current position. See Ellis v. Ringgold Sch. Dist., 832 F.2d 27, 30 (3d Cir.1987).
However, under the analysis suggested in Granziel, the long period of time which has elapsed since the termination of plaintiff's employment in Piscataway, the fact that plaintiff currently has "the benefit of continued employment and job security," and that his immediate reinstatement would cause another tenured teacher substantial hardship,[6] make it appropriate "to require him to await... the occurrence of the next job opening" before being offered reinstatement. 279 N.J.Super. at 112, 652 A.2d 227. We note, finally, that because substantial time has elapsed since this case was last before the trial court, it may have become evident by now that plaintiff does not face any genuine job insecurity in his present position and consequently no longer has any reason to seek reinstatement to his former position in Piscataway.

IV
We turn finally to plaintiff's argument that the trial court's award of $169,450.85 for attorneys' fees was inadequate and the Board's argument on its cross appeal that the award of $24,000 to plaintiff for legal services performed in connection with the Board's appeal to the Supreme Court was excessive.
N.J.S.A. 34:19-5(e) provides that upon a finding of a violation of CEPA the court may order "[t]he payment by the employer of reasonable costs, and attorney's fees." The parties have assumed for the purpose of this appeal that awards of attorneys' fees under N.J.S.A. 34:19-5(e) are governed by the same principles which apply to attorneys' fee awards under the *966 LAD, N.J.S.A. 10:5-27.1.[7] In Rendine v. Pantzer, supra, 141 N.J. at 316-345, 661 A.2d 1202 and Szczepanski v. Newcomb Medical Ctr., Inc., 141 N.J. 346, 661 A.2d 1232 (1995), the Court set forth standards to be applied in making attorneys' fee awards under fee shifting statutes such as the LAD. One of the factors a court should consider in determining the amount of an attorneys' fee award is the degree of success the plaintiff has achieved in the litigation. Rendine, supra, 141 N.J. at 336, 661 A.2d 1202; Szczepanski, supra, 141 N.J. at 355-56, 661 A.2d 1232.
In awarding plaintiff less than one-third of the attorneys' fees he sought, the trial court placed substantial reliance on the fact that plaintiff recovered only $60,000 in compensatory damages and that his claims for punitive damages and reinstatement were ultimately denied:
On the issue of punitive damages, the court concludes that plaintiff was only partially successful. It was reasonable in the exercise of their advocacy duties to seek punitive damages and thus their initial efforts in the trial court and subsequent appellate efforts on the legal issue may be said to be successful. That, of course, must be tempered by the fact that there was not ultimate recovery by plaintiff of any punitive damages....
In regard to reinstatement and future claims, plaintiff cannot be said to be a prevailing party by any standard.
....
In regard to issues presented to this court, pretrial, trial and post-trial, plaintiff was successful only on the issues presented to the jury. Weighing the jury trial time towards that claim as compared to the bench dispositions of the reinstatement and punitive damage issue on which defendant prevailed, the court concludes that plaintiff's lodestar amount attributable to his successful claims must be reduced by 50%.
By this opinion we are reversing the denial of plaintiff's claims for punitive damages and reinstatement and remanding for further proceedings with respect to those claims. Consequently, additional legal services will now have to be performed on plaintiff's behalf, thereby providing a basis for plaintiff seeking an additional attorneys' fee award. Moreover, the remand could result in plaintiff prevailing on his claim for punitive damages and obtaining reinstatement, thus negating one of the trial court's primary grounds for denying a substantial portion of plaintiff's application for attorneys' fees. Therefore, we conclude that appellate review of the issues relating to the award of attorney's fees should be postponed until there has been a final determination of all issues at the trial level. See Maiorino v. Schering-Plough, Corp., supra, 302 N.J.Super. at 359, 695 A.2d 353.
Accordingly, we reverse the order denying plaintiff's punitive damages claim, affirm in part and reverse in part the order denying plaintiff's application for reinstatement, and remand to the trial court for further proceedings in conformity with this opinion with respect to both claims. In addition, we vacate the order awarding plaintiff attorneys' fees and remand this aspect of the case for reconsideration and redetermination at the conclusion of the proceedings on remand.
PETRELLA, P.J.A.D., (concurring in part and dissenting in part).
The "law of the case" concept is merely a non-binding decisional guide addressed to the good sense of the court in the form of a "cautionary admonition" against relitigation when the case demands it. State v. Hale, 127 N.J.Super. 407, 411, 317 A.2d 731 (App. Div.1974); see also Bahrle v. Exxon Corp., 279 N.J.Super. 5, 21, 652 A.2d 178 (App.Div. 1995), aff'd, 145 N.J. 144, 678 A.2d 225 (1996). Here, my disagreement with the majority opinion is with its application of the law of the case concept discussed in Point I of the opinion, and also with respect to the punitive damages issue referred to in Point II.
Although I generally concur in point III of the court's opinion, I am of the view that *967 because the Supreme Court in Abbamont v. Piscataway Township Bd. of Educ., 138 N.J. 405, 435-436, 650 A.2d 958 (1994) was equally divided on the significant issue of the legislature's intent to require public entities (and thus its taxpayers) to be subject to the payment of punitive damages under CEPA, neither the opinion by Justice Handler nor the concurring and dissenting opinion by Justice Pollock on that issue either resolves the question or constitutes the law of the case. Since only three Justices voted for each viewpoint in the portion of the opinions in Abbamont dealing with the punitive damage issue, the only "binding" opinion on the trial court was that of this court. Moreover, although this appeal is essentially a continuation of the same matter, the judge gave additional reasons in reaching his latest decision. Under the circumstances, and in view of the important public policy interests involved, the issue deserves to be reconsidered and resolved finally on this appeal.
Accordingly, I dissent from the views expressed in the majority opinion with respect to punitive damages essentially for the reasons stated in my earlier dissenting opinion in this matter in Abbamont v. Piscataway Tp. Bd. of Educ., 269 N.J.Super. 11, 33-35, 634 A.2d 538 (App.Div.1993) (Petrella, P.J.A.D., concurring and dissenting).
I also dissent from so much of the majority's opinion in Point II which seems to impute potential liability for punitive damages (presumably under agency principles) to the Board of Education based on actions of the former superintendent of schools and certain other management-type officials. In my view, unless it can be established that those individuals acted wrongfully or at the specific direction of the Board of Education, the actions of those individuals should not be vicariously attributed to the Board. I do not address whether any responsibility should be potentially attributable to any culpable individual.
I would thus affirm the determination as to the punitive damages issue.
NOTES
[1] We also made various other rulings which are not relevant to the present appeal. See id. at 31-33, 634 A.2d 538.
[2] Although plaintiff failed to file a copy of the trial transcripts as required by R. 2:5-3(a)(b), the Board has included substantial excerpts from the trial testimony in its appendix, and we are satisfied that the record before us is adequate to decide the issues presented by this appeal.
[3] In fact, there is some question whether this court can decline to follow even one of its own decisions when that decision has been rendered in the same case. Compare State v. Stewart, 196 N.J.Super. 138, 143-44, 481 A.2d 838 (App.Div.), certif. denied, 99 N.J. 212, 491 A.2d 707 (1984) and State v. Myers, 239 N.J.Super. 158, 164, 570 A.2d 1260 (App.Div.), certif. denied, 127 N.J. 323, 604 A.2d 598 (1990), with State v. Reldan, 100 N.J. 187, 203-07, 495 A.2d 76 (1985) and Daniel v. State, Dept. of Transp., 239 N.J.Super. 563, 581, 571 A.2d 1329 (App.Div.), certif. denied, 122 N.J. 325, 585 A.2d 343 (1990).
[4] The dissenting Justices joined in Justice Handler's opinion except with respect to the issue of whether a claim for punitive damages can be made against a public entity. Id. at 435, 650 A.2d 958.
[5] The record indicates that plaintiff asserted claims for lost wages, which the parties stipulated to be $57,816.50, and emotional distress, including the anxiety caused by his loss of tenure.
[6] A certification by the Board's Director of Personnel submitted in opposition to plaintiff's motion for reinstatement indicates that if plaintiff were immediately reinstated to his former position, he would bump another industrial arts teacher who has been employed by the district for over a decade, which would result in that teacher being transferred to a position as an elementary school teacher, for which he is also certified, and the layoff of an untenured elementary school teacher.
[7] Because the parties agree on this point, we have no occasion to consider whether the court's authority to award attorneys' fees under N.J.S.A. 34:19-5(e) is the same as under N.J.S.A. 10:5-27.1. See Moody v. Township of Marlboro, 855 F.Supp. 685, 689-90 (D.N.J.1994), aff'd, 54 F.3d 769 (3d Cir.1995).