SUPREME COURT OF NEW JERSEY
M-1224 September Term 2020
083398

State of New Jersey,

   Plaintiff-Respondent,

     v.

Michelle Lodzinski,

   Defendant-Movant.

O R D E R

Pending before the Court is defendant's motion for reconsideration of the Court's opinion, filed on May 26, 2021.

The background to the motion is as follows.

### I.

On July 31, 2014, a Middlesex County grand jury indicted defendant on a single count of first-degree murder of her five-year-old son, Timothy Wiltsey, more than twenty-three years after his disappearance. At the close of the State's case, defendant filed a motion for a judgment of acquittal pursuant to Rule 3:18-1. That motion was denied, and the jury proceeded to convict defendant of first-degree murder. The trial court denied defendant's motion

1

for a judgment of acquittal notwithstanding the verdict pursuant to Rule 3:18-2 and sentenced her to thirty years' imprisonment without parole eligibility.

Defendant appealed her conviction to the Appellate Division, arguing, in relevant part, that the trial court had erred in denying her motion for acquittal notwithstanding the verdict. The Appellate Division affirmed her conviction, explaining that it had assessed the sufficiency of the evidence by looking only to the State's proofs. While the Appellate Division observed that the defendant had offered "substantial" evidence at trial that "in many ways directly rebutted the State's proofs," this evidence went unreviewed and unconsidered. Defendant sought this Court's review and we granted certification. 241 N.J. 81 (2020).

All six members of the Court agreed that the Appellate Division applied an incorrect standard that limited "the scope of the evidence that should be considered in reviewing a post-verdict motion for a judgment of acquittal." State v. Lodzinski, 246 N.J. 331, 339 (2021); accord id. at 359-60 (Patterson, J., concurring). The concurring opinion stated the unanimous view of the Court that "[w]hen a defendant moves for a judgment of acquittal after all the proofs, . . . the court considers not only the evidence presented by the State, but 'the entirety of the evidence.'" Id. at 358 (quoting State v. Williams, 218 N.J. 576, 594 (2014)). We also characterized our statement in State v.

Samuels that "a court 'may not consider any evidence adduced by the defense in determining if the State had met its burden,'" 189 N.J. 236, 245 (2007) (quoting Pressler, Current N.J. Court Rules, cmt. 1 on R. 3:18 (2006)), as "a departure from our law," Lodzinski, 246 N.J. at 358 n.6 (Patterson, J., concurring). The concurring and dissenting opinions then applied this corrected standard, reaching opposite conclusions as to the sufficiency of the evidence. Both opinions earned the support of three Justices.

Notwithstanding this conclusion, the per curiam opinion of the Court stated that the "judgment of the Appellate Division is affirmed by an equally divided Court." Id. at 339.

## II.

Following this Court's decision, defendant filed a motion for reconsideration pursuant to Rule 2:11-6(a). Defendant argues that this Court erred in determining that the Appellate Division's decision could be affirmed by an equally divided Court given our unanimous determination that the Appellate Division had applied the incorrect standard. Defendant further argues that she has never received judicial review of her insufficient-evidence claim under the correct standard, as this Court could not take an affirmative act without a majority vote for that action. Defendant contends that this is an

3

error in the handling of her appeal that works a violation of her due process rights.[1]

Motions for reconsideration in our appellate courts are governed by Rule 2:11-6. Under Rule 2:11-6(b), "[a] motion for reconsideration will be granted only if it is moved by a justice or judge who concurred in the judgment or decision, and a majority of the court so determines." Therefore, two requirements must be met for this Court to grant a motion for reconsideration: the support of a single justice who joined the judgment or decision on which

---

[1] Defendant also requested that the senior judge of the Appellate Division be assigned for temporary service on the Court to hear defendant's motion for reconsideration, in order to avoid a second equally divided decision. That authority is reposed in the Chief Justice, or the Presiding Justice, pursuant to authority found in the Constitution and in the Court Rules. N.J. Const. art. VI, § 2, ¶ 1; R. 2:13-2(a); see generally Henry v. Dep't of Hum. Servs., 204 N.J. 320, 345-46 (2010) (Rabner, C.J., concurring) (addressing the breadth and exercise of this authority and stating that the power's use may be necessary when there is no underlying decision on which an evenly divided Court's ruling constitutes the first instance of judicial review). This power has been exercised in motions for reconsideration before. See, e.g., Motor Club Fire & Cas. Co. v. N.J. Mfrs. Ins. Co., 73 N.J. 425, 428 (1977) (providing an example of the use of the assignment power to call up senior member of the Appellate Division in order to resolve, on reconsideration, an important issue on which the Court had split three-three).

The Presiding Justice has assigned the senior most member of the Appellate Division, the Honorable Jose L. Fuentes, P.J.A.D., to serve in the Court's consideration of this motion for reconsideration and in any further proceedings in this matter.

reconsideration is sought, and, separately, the support of a majority of the Court. In this instance, because both requirements are met, the motion for reconsideration will be granted and the matter reargued for the following reasons.

III.

Any member of this Court who joined the per curiam portion of our earlier decision in this matter may serve as the justice "who concurred in the judgment or decision" on which reconsideration is sought, for purposes of Rule 2:11-6(b). This Court "unanimously modif[ied] the Appellate Division's holding with respect to its characterization of the scope of the evidence that should be considered in reviewing a post-verdict motion for a judgment of acquittal" and unanimously agreed that the effect of that determination was an affirmance of the Appellate Division's decision. Lodzinski, 246 N.J. at 339; see also id. at 385 (Albin, J., dissenting) ("[T]he murder conviction in this case will stand . . . ."). Because it is that aspect of our decision, and only that aspect, on which defendant requests reconsideration, any of the six Justices joining that per curiam decision may be the requisite justice who "move[s]" a motion to reconsider that portion of the decision. And because at least one Justice who joined our per curiam decision in this matter has voted in favor of

granting reconsideration, that requirement of Rule 2:11-6(b) does not erect a barrier to our review.

Moreover, on the merits, defendant rightfully asserts that adjudicating her guilt or innocence by using a concededly erroneous ruling as a tiebreaker denies meaningful judicial review. Though there are countless instances of this Court resolving appeals with an equally divided affirmance, there are no such examples of the Court doing so where the decision to be affirmed is unanimously judged to apply incorrect legal standards. Our Court's split on the application of the correct standard of review to defendant's sufficiency-of-the-evidence argument did not resolve the appeal from the trial court's denial of her Rule 3:18-2 motion. The split requires correction by the appellate body. Cf. R. 2:13-2(b); see Pressler & Verniero, Current N.J. Court Rules, cmt. on R. 2:13-2 (2021). Under Rule 2:13-2(b), when a two-judge panel "cannot agree as to the determination" of the issue on appeal, the panel "shall" "call a third judge to participate in the decision." The rationale for Rule 2:13-2(b) is quite simple: a third judge is required to participate because "the rule does not intend an affirmance of the order or judgment appealed from by reason of an equally split appellate panel." Pressler & Verniero, Current N.J. Court Rules, cmt. on R. 2:13-2 (2021).

6

Criminal defendants in New Jersey have a constitutionally protected "automatic right of appeal" of a final judgment of appeal. N.J. Const. art VI, § 5, ¶ 2; see also R. 2:2-3(a); R. 2:3-2. Where "a State has created appellate courts as 'an integral part of the . . . system for finally adjudicating the guilt or innocence of a defendant,' the procedures used in deciding appeals must comport with the demands of the Due Process and Equal Protection Clauses of the Constitution." Evitts v. Lucey, 469 U.S. 387, 393 (1985) (omission in original) (quoting Griffin v. Illinois, 351 U.S. 12, 18 (1956)); accord State v. K.P.S., 221 N.J. 266, 279-80 (2015). "In order to satisfy the Due Process Clause, defendants must be given a 'meaningful opportunity to be heard.'" State v. Bianco, 103 N.J. 383, 391 (1986) (quoting Boddie v. Connecticut, 401 U.S. 371, 377 (1971)).

Defendant has brought to this Court's attention a failing in its prior handling of this matter, which requires correction. She rightfully claims that the unique procedural posture of this Court's decision left her appeal unconsidered under the proper legal standard, which, left uncorrected, works a violation of her due process rights. Defendant does not challenge an evidentiary ruling, the construction of a statute, or the meaning of an insurance policy provision. She challenges the very process by which this evenly divided Court addressed her conviction for first-degree murder. One searches

7

in vain to find a more "important issue," <u>Motor Club Fire & Cas. Co. v. N.J. Mfrs. Ins. Co.</u>, 73 N.J. 425, 428 (1977), that would justify rehearing. Defendant must be provided her right to be heard on appeal by an appellate body using the correct standard of review.

IV.

In light of the foregoing, it is hereby ORDERED that the motion for reconsideration is granted.

Defendant and the State shall appear before the Court for reargument on the appeal on the session of October 25-26, 2021, at a time to be scheduled by the Clerk of the Court. The Court shall reconsider the matter on the existing record, and no further briefs or submissions shall be accepted. Nor will the Court accept additional applications for leave to participate.

WITNESS, the Honorable Jaynee LaVecchia, Presiding Justice, at Trenton, this 6th day of October, 2021.

CLERK OF THE SUPREME COURT

JUSTICES LaVECCHIA, ALBIN, and PIERRE-LOUIS, and JUDGE FUENTES (temporarily assigned), join in the Order. JUSTICE ALBIN concurs in the Order. JUSTICES PATTERSON, FERNANDEZ-VINA, AND SOLOMON dissent from the Order. CHIEF JUSTICE RABNER did not participate.

JUSTICE ALBIN concurs in the Order.

Rule 2:11-6 allowed this Court to grant the motion for reconsideration when it became evident that the Court, through oversight or inadvertence, made a fundamental mistake in rendering its decision. Though rarely invoked, the Rule permits the Court to correct its own errors. Admitting a procedural error of constitutional magnitude, as the Court does today, keeps faith with the purpose of that Rule.

As the Order states, the per curiam portion of the opinion -- joined by all six members of the Court participating in this appeal -- held that the Appellate Division applied the wrong standard "in reviewing [Lodzinski's] post-verdict motion for a judgment of acquittal" under Rule 3:18-2. Ante at ___ (slip op. at 5) (quoting State v. Lodzinski, 246 N.J. 331, 339 (2021)). The Appellate Division's review of Lodzinski's motion for a judgment of acquittal notwithstanding the verdict surveyed only the evidence presented by the State. The Appellate Division failed to consider the entirety of the evidence -- the evidence presented by both the State and defense -- as required by state law, State v. Williams, 218 N.J. 576, 594 (2014), and federal law, Jackson v. Virginia, 443 U.S. 307, 316-19 (1979) (stating that due process demands that "all of the evidence" be considered in deciding such an issue (emphasis omitted)).

All six members joining the per curiam opinion agreed that the Appellate Division's review of the sufficiency of the evidence was substantively and constitutionally flawed.  See Lodzinski, 246 N.J. at 339, 357-60.

In applying the correct standard -- reviewing the entirety of the evidence in the light most favorable to the State -- the Court split three-three on whether the proofs satisfied the beyond-a-reasonable-doubt requirement to support Lodzinski's murder conviction.  With the benefit of hindsight, it is now clear that the Court had only two viable options when it reached a stalemate:  either remand to the Appellate Division to review the evidence under the proper standard set forth in the per curiam opinion or order re-argument and call up the senior member of the Appellate Division to sit as the seventh member of the Court to break the deadlock.  Proceeding as we did was a mistake.

As indicated by the Order, a three-three split on the Supreme Court cannot uphold an Appellate Division decision that all six Justices agree is constitutionally infirm.  Only three members of this Court -- and no member of the appellate panel -- affirmed Lodzinski's conviction applying the proper sufficiency-of-the-evidence standard.  Had the three-judge appellate panel applied the appropriate standard, no one would question that a split decision by this Court would require an affirmance of the conviction -- and a denial of the motion for reconsideration.  But that is not the case here.

2

My dissenting colleagues' reliance on Abbamont v. Piscataway Twp. Bd. of Educ., 163 N.J. 14, 14 (1999), and State v. Manzie, 168 N.J. 113, 114-23 (2001), for the proposition that a split decision of this Court results in the affirmance of the Appellate Division judgment is inapposite. Unlike here, the members of the Abbamont and Manzie Courts did not unanimously agree that, based on the governing case law, the decisions rendered by the appellate panels were substantively and constitutionally flawed. In those cases, the Justices merely disagreed on the interpretation of the statutes at issue -- with three members of a six-member Court concurring with the appellate panels' statutory interpretation, leading to affirmances. See Abbamont v. Piscataway Twp. Bd. of Educ., 138 N.J. 405, 413, 435 (1994); Manzie, 168 N.J. at 120-23. There, the decisions of the Appellate Division were the tie breakers. An Appellate Division decision that all agree violates our case law and constitutional norms cannot be a tie breaker.

A constitutionally defective decision, moreover, cannot serve as binding authority under the discretionary law-of-the-case doctrine. See State v. K.P.S., 221 N.J. 266, 280 (2015) ("[T]he appellate panel in this case denied defendant [appellate review] based on the panel's mistaken application of the law-of-the-case doctrine."); accord In re Estate of Chavana, 993 S.W.2d 311, 315 (Tex.

3

App. 1999) ("[T]he court is being asked to apply the law of the case to reach an unconstitutional result. This we cannot do." (footnote omitted)).

Our State Constitution affords to all defendants convicted of a crime an "automatic right of appeal" -- an appeal that comports with principles of due process enshrined in both our Federal and State Constitutions. See K.P.S., 221 N.J. at 279-80 (citing N.J. Const. art. VI, § 5, ¶ 2); see also R. 2:2-3(a)(1); R. 2:3-2. Due process guarantees "certain minimum safeguards necessary to make that appeal 'adequate and effective'" -- including "a fair opportunity to obtain an adjudication on the merits of [her] appeal." Evitts v. Lucey, 469 U.S. 387, 392, 405 (1985) (quoting Griffin v. Illinois, 351 U.S. 12, 20 (1956) (plurality opinion)). Inherent in the "right of appeal" is the right to a resolution of the appeal. See ibid.

This Court's three-three split did not resolve Lodzinski's appeal challenging the sufficiency of all the evidence based on a substantively and constitutionally correct standard of review. The appellate panel upheld Lodzinski's conviction by applying the wrong standard of review. That error was a fundamental defect in the appellate process that undermined the integrity of the Appellate Division's judgment.

That Lodzinski's attorney cited the wrong standard of review in her appellate brief does not render harmless or excuse the appellate panel's failure

4

to apply the correct standard. See R. 2:10-2 ("[T]he appellate court may, in the interests of justice, notice plain error not brought to the attention of the trial or appellate court."). An appellate court has a non-delegable obligation to maintain "minimum safeguards necessary to make [an] appeal 'adequate and effective'" as required by due process. See Evitts, 469 U.S. at 405 (quoting Griffin, 351 U.S. at 20). My dissenting colleagues argue that this is a case of invited error. An appellate court, however, cannot accept an invitation to deny a defendant due process.

In sum, the "right of appeal" confers on a convicted defendant the right to a resolution of the appeal. Id. at 392, 405. This Court has the authority to review a Rule 3:18-2 sufficiency-of-the-evidence motion de novo, but an equally divided Court cannot resolve the question when the appellate court has applied the wrong standard.

Rule 2:11-6(b) provides that "[a] motion for reconsideration will be granted only if it is moved by a justice or judge who concurred in the judgment or decision, and a majority of the court so determines." All six Justices "concurred" in the "decision," which held that the Appellate Division applied a substantively and constitutionally incorrect standard. Concurring in that per curiam decision should have led each Justice to realize that the Appellate Division's sufficiency-of-the-evidence holding could not be affirmed on a split

vote.  Any Justice concurring in the per curiam decision had the right to move for reconsideration of the erroneous judgment of this Court.

By promulgating Rule 2:11-6(b), the Court has acknowledged that it is not infallible and has provided a mechanism to correct its own mistakes.  By granting this motion for reconsideration, the Court provides Lodzinski and the State the opportunity for a final resolution of the sufficiency-of-the-evidence argument based on the correct standard of review.  That final resolution, whatever it may be, must await re-argument before a seven-member Court.

JUSTICE PATTERSON, JUSTICE FERNANDEZ-VINA, and JUSTICE SOLOMON dissent from the Order.

In this appeal, a six-member Court equally divided on the merits of defendant's Michelle Lodzinski's motion for a judgment of acquittal notwithstanding the jury's verdict of guilty in the first-degree murder of her five-year-old son, Timothy Wiltsey.  State v. Lodzinski, 246 N.J. 331, 339 (2021).  Pursuant to this Court's practice and precedent, the three-to-three vote affirmed the Appellate Division's decision upholding defendant's conviction. Ibid.

In the Order entered today, defendant is granted reconsideration and the opportunity to seek a judgment of acquittal before a reconstituted Court.  She is not afforded this extraordinary relief because of any defect in her trial; indeed, she prevailed in every evidentiary dispute before the trial court.  No new legal principle has emerged from defendant's appeal that might warrant rehearing.  Not a single justice has changed his or her mind about the trial evidence or the governing law.  Instead, defendant secures rehearing and the prospect of acquittal on an astonishing ground:  that because the Appellate Division applied an incorrect standard of review that defendant herself urged it to apply -- an error that this Court has since corrected -- she has been denied due process.

For the reasons explained below, defendant's constitutional rights were fully protected in her appeal, just as they were at her trial. This Court reviewed the trial court's decision denying defendant's motion for a judgment of acquittal under the correct standard, not the mistaken standard that she argued to the Appellate Division. Id. at 357-59, 376-79. Under our jurisprudence, a concurring opinion by three members of an equally divided Court is not precedential in other cases, but it provides the governing law in the appeal itself. Abbamont v. Piscataway Twp. Bd. of Educ., 314 N.J. Super. 293, 300-01 (App. Div. 1998), aff'd, 163 N.J. 14 (1999). In our concurring opinion, indisputably applying the proper test, we thus afforded defendant the due process to which she was entitled on appeal. We therefore voted to deny defendant's motion for reconsideration.

As our colleagues acknowledge, this Court's rule governing motions for reconsideration, Rule 2:11-6(b), requires more than a majority vote to grant rehearing of a decided appeal. The rule does not authorize reconsideration unless "a justice or judge who concurred in the judgment or decision" votes for reconsideration. R. 2:11-6(b); see also ante at ___ (slip op. at 4-5) (order granting motion for reconsideration). Because we -- the three members of the Court who concurred in the decision affirming defendant's conviction -- voted

2

to deny reconsideration, no such "justice or judge" supports defendant's motion in this appeal.

Confronted with that requirement, our colleagues now claim to have "concurred" in the decision affirming defendant's conviction, notwithstanding the fact that their dissent characterized that decision as a miscarriage of justice unrivalled in the history of our State. See Lodzinski, 246 N.J. at 385, 400, 402 (Albin, J., dissenting). That claim, asserted only to secure a judgment of acquittal for defendant in the murder of her son, does not withstand the slightest scrutiny. Our colleagues did not "concur" in the decision, but emphatically dissented. Id. at 384-402. We view the Order entered today to be unauthorized by Rule 2:11-6(b), a court rule that this Court itself adopted, and to which it has always adhered.

Accordingly, we respectfully dissent.

## I.

### A.

#### 1.

In a twenty-eight-day trial, the State and defendant presented extensive evidence to a jury.[1]

---

[1] The State's and defendant's trial evidence is reviewed in detail in our concurring opinion, Lodzinski, 246 N.J. at 362-76 (Patterson, J., concurring),

Among other evidence, the State presented testimony indicating that defendant told police that her son was abducted at a carnival in Sayreville on May 25, 1991; that she gave police more than a half-dozen contradictory accounts of the claimed abduction; that the child's skull, leg bones, and sneakers were found in or near a creek four-tenths of a mile from defendant's former workplace; that defendant did not disclose that workplace to police when she named her prior employers until she was directly confronted about it; that defendant's son's former babysitters recognized a blanket found near the child's remains as one that they had seen at defendant's home; and that an expert witness in forensic pathology concluded that the child died as the result of a homicide, not by virtue of a disease, suicide, or an accident. See Lodzinski, 246 N.J. at 362-76 (Patterson, J., concurring). And defendant presented, among other evidence, the testimony of witnesses who had told police that they saw a boy who looked similar to defendant's son at the Sayreville carnival; the testimony of an Arizona man who contended that his former codefendant in a robbery case in that state had traveled to New Jersey and killed defendant's son -- a contention refuted by the former codefendant

---

and the State's trial evidence is reviewed in detail in the dissenting opinion, id. at 386-97 (Albin, J., dissenting).

who testified at trial; and expert testimony calling into question the State's proofs. See id. at 371-76.

Charged by the trial court on the State's burden to prove beyond a reasonable doubt the elements of first-degree murder, N.J.S.A. 2C:11-3(a)(1), as well as the elements of the lesser-included offenses of first-degree aggravated manslaughter, N.J.S.A. 2C:11-4(a)(1), and second-degree reckless manslaughter, N.J.S.A. 2C:11-4(b)(1), the jury returned a verdict of guilty beyond a reasonable doubt on the first-degree murder charge, Lodzinski 246 N.J. at 351 (Patterson, J., concurring).

2.

Defendant filed a post-trial motion pursuant to Rule 3:18-2 for a judgment of acquittal notwithstanding the verdict on the ground that the evidence presented was insufficient to support the jury's verdict of guilt beyond a reasonable doubt.

A defendant must meet a stringent burden in order to be awarded a judgment of acquittal notwithstanding a jury verdict. In State v. Reyes, this Court held that when a trial or appellate court decides such a motion, it determines

> whether, viewing the State's evidence in its entirety, be
> that evidence direct or circumstantial, and giving the
> State the benefit of all favorable testimony as well as
> all of the favorable inferences which reasonably could

5

> be drawn therefrom, a reasonable jury could find guilt
> of the charge beyond a reasonable doubt.
>
> [50 N.J. 454, 458-59 (1967).]

If any reasonable jury could find guilt beyond a reasonable doubt, the motion must be denied. Ibid.

Reyes arose from a motion for a judgment of acquittal at the close of the State's case, and the Court did not address in that case the scope of the evidence that must be considered when such a motion is filed after a verdict. Ibid. With two of our current colleagues participating, this Court held in 2007 that a court deciding a motion for a judgment of acquittal after all the evidence is presented must confine its review of the adequacy of the evidence to the State's case and the inferences to be derived from that evidence, and "may not consider any evidence adduced by the defense in determining if the State had met its burden as to all elements of the crime charged." State v. Samuels, 189 N.J. 236, 245 (2007) (quoting Pressler, Current N.J. Court Rules, cmt. 1 on R. 3:18 (2006)); see also id. at 255 (Albin, J., dissenting) (likewise identifying the governing standard as whether "the State presented sufficient evidence from which a jury could conclude beyond a reasonable doubt that defendant committed" the crimes charged, but disagreeing with the majority as to the application of that standard in the Samuels appeal).

Seven years ago, however, the Court held that when a defendant moves for a judgment of acquittal <u>after the verdict</u>, the court considers not only the State's evidence, but "the entirety of the evidence," with that evidence viewed favorably to the State as <u>Reyes</u> requires. <u>State v. Williams</u>, 218 N.J. 576, 594 (2014).

Consistent with <u>Williams</u>, the trial judge in this case weighed all of the evidence when he denied defendant's motion for a judgment of acquittal notwithstanding the verdict. In his opinion, the trial judge wrote that when a court considers a motion for a judgment of acquittal based on the sufficiency of the evidence, it "must decide whether the evidence is sufficient to warrant a conviction beyond a reasonable doubt," and "must sift the evidence to determine whether a jury could have rationally found that the essential elements of the crime were proven beyond a reasonable doubt." As defendant confirmed to this Court, the trial court did not confine its review to the State's evidence alone, but properly considered all of the evidence when it decided her motion for a judgment of acquittal under <u>Rule</u> 2:11-6(b). Indeed, in her supplemental reply brief to this Court, opposing the State's claim that she had waived her argument about the sufficiency-of-the-evidence standard by not asserting that argument below, defendant stated that she had no reason to raise the issue because "nothing in the trial court's recitation of the applicable law

7

nor its abbreviated discussion of the evidence suggested that it did not, or could not, consider defense evidence in denying Michelle's post-conviction acquittal motion."

Applying that standard, the trial court found that the evidence was sufficient to support a reasonable jury's verdict of guilty beyond a reasonable doubt.

### B.

Defendant appealed her conviction, contending that the trial court erred when it denied her motion for a judgment of acquittal.[2]  In her brief to the Appellate Division, defendant asserted the same erroneous formulation of the standard governing her motion that she now claims deprived her of due process.

Quoting Reyes, 50 N.J. at 459, defendant argued that the Appellate Division should decide "whether, viewing the State's evidence in its entirety, be that evidence direct or circumstantial, and giving the State the benefit of all of its favorable testimony as well as all of the favorable inferences which

---

[2]  Defendant challenged her conviction on a second ground as well:  the denial of her motion for a new trial based on the trial court's dismissal of a juror who violated its instructions and conducted independent research, and the court's substitution of an alternate for that juror.  Lodzinski, 246 N.J. at 353-54.  In her motion for reconsideration, defendant does not raise the juror-substitution issue, but relies exclusively on her challenge to the sufficiency of the evidence.

reasonably could be drawn therefrom, a reasonable jury could find guilt of the charge beyond a reasonable doubt." Defendant thus urged the Appellate Division to limit its consideration to the evidence presented by the State when it reviewed the trial court's decision denying her motion for a judgment of acquittal. In its responding brief, the State followed suit, contending that the Appellate Division should base its decision on the evidence that it had presented to the jury.

The Appellate Division affirmed defendant's conviction in an unpublished opinion. Adopting the standard that defendant had urged it to apply, the appellate court commented that "[i]t is generally stated that whether the motion to acquit is made at the end of the State's case or after the end of the entire case the standard is the same, i.e., only the State's proofs will be considered." (quoting State v. Sugar, 240 N.J. Super. 148, 152-53 (App. Div. 1990)). Reviewing the State's evidence, the Appellate Division held that the evidence was sufficient to support a reasonable jury's verdict of guilty beyond a reasonable doubt, and affirmed defendant's conviction.

## C.

With the Chief Justice recused, a six-member Court granted defendant's petition for certification. 241 N.J. 81 (2020). No Appellate Division judge

9

was assigned to temporarily serve on the Court and hear defendant's appeal.[3]

In her petition for certification, defendant premised a federal constitutional argument on the very test for a post-verdict motion for a judgment of acquittal that she had urged the Appellate Division to apply. Without citing Williams, defendant stated that Samuels was wrongly decided, and argued that if the standard applied by the Appellate Division represented New Jersey law, that standard violated federal due process principles set forth in Jackson v. Virginia, 443 U.S. 307, 317 (1979). Thus, having misstated the standard governing her motion to the Appellate Division, defendant argued before us that the appellate court's application of that standard -- exactly as she presented it -- violated her federal constitutional rights.

The Court's per curiam opinion recited that "the six members of the Court who participated in this appeal unanimously modify the Appellate

---

[3] The Chief Justice may in his discretion assign an Appellate Division judge to temporarily serve on this Court in several settings; one such setting is an appeal in which a justice's absence leaves the Court with a quorum but not a full complement of seven justices. See Henry v. Dep't. of Hum. Servs., 204 N.J. 320, 340-54 (2010) (Rabner, C.J., concurring) (discussing the Chief Justice's authority under Article VI, Section 2, Paragraph 1 to assign Appellate Division judges to temporarily serve on the Court); see also R. 2:13-2(a). As the Order granting reconsideration notes, when the Chief Justice does not participate in a particular appeal and only six justices participate, the Presiding Justice may exercise the same discretionary authority. Ante at ___ n.1 (slip op. at 4 n.1)(order granting motion for reconsideration); see also R. 2:13-2(a).

Division's holding with respect to its characterization of the scope of the evidence that should be considered in reviewing a post-verdict motion for a judgment of acquittal." Lodzinski, 246 N.J. at 339. In the concurring opinion, we reiterated the Williams standard, noting that when a motion for a judgment of acquittal notwithstanding the verdict is filed after the verdict, the court must consider all of the evidence, including the evidence presented by the defense. Id. at 358-59 (Patterson, J., concurring). All members of the Court participating in the appeal held that the New Jersey standard for such motions comports with federal due process principles. Id. at 358-60; id. at 385 n.1 (Albin, J., dissenting).

The Court sharply divided, however, as to the outcome of defendant's appeal. In our concurring opinion, we reviewed the defense evidence as well as the State's evidence, and concluded that the entirety of the evidence supported a reasonable jury's verdict of guilty beyond a reasonable doubt. Id. at 357-79 (Patterson, J., concurring).

With no reference to any proofs presented by the defense, the dissenting justices contended that the evidence was insufficient to support a reasonable jury's decision to convict defendant. Id. at 384-400 (Albin, J., dissenting). They concluded their dissent by stating that under federal due process principles, "Lodzinski's murder conviction cannot stand. But it will, at least

11

for now, because the three dissenting votes in this appeal are insufficient to prevent this miscarriage of justice." Id. at 402 (citation omitted).

D.

Defendant swiftly responded to the dissent's prompt. In her motion for reconsideration, she stated that she was entitled to a rehearing with an Appellate Division judge added to the Court for her appeal. Defendant claimed that although her case had been reviewed by the trial court, the Appellate Division and this Court, no court had ruled on her insufficient-evidence claim under the correct test. She further asserted that because this Court equally divided on her sufficiency-of-the-evidence claim, it issued no precedential ruling and subjected her to a constitutionally-flawed ruling by the Appellate Division, thus violating her federal due process rights under Mathews v. Eldridge, 424 U.S. 319, 332 (1976).

The Presiding Justice then assigned the senior Appellate Division judge to temporarily serve on the Court. The Court granted reconsideration by a vote of four to three. Defendant thus achieved a remedy that appears to be unprecedented: the addition of an Appellate Division judge, at the behest of an unsatisfied litigant, for a new hearing before a recomposed Court.

12

II.

For the reasons explained below, we conclude that defendant's due process argument is without merit.

Defendant's first contention -- that her sufficiency-of-the-evidence claim has yet to be reviewed under the correct standard -- is simply untrue.  As noted, the trial court properly considered all of the evidence when it denied defendant's post-verdict motion for a judgment of acquittal under Rule 3:18-2. In our concurring opinion, we considered the defense evidence as well as the State's evidence under the standard set forth in Williams, 218 N.J. at 594, a standard that defendant concedes is constitutional.  Lodzinski, 246 N.J. at 357-79.  Only the Appellate Division, in an error invited by defendant herself, incorrectly stated the test.

Defendant's second contention -- that the Court's per curiam opinion left in place a "flawed" Appellate Division's decision as controlling law -- ignores this Court's jurisprudence regarding the import of three-three ties.

Defendant is correct that our concurring opinion in State v. Lodzinski is not a precedential opinion; when this Court equally divides and thus affirms the Appellate Division's decision, its concurring opinion cannot be cited to courts as precedent in cases that follow.  Mount Holly Twp. Bd. of Educ. v. Mount Holly Twp. Educ. Ass'n, 199 N.J. 319, 332 n.2 (2009).  Defendant's

13

motion for reconsideration, however, concerns the Lodzinski case itself, not some future case. And in the Lodzinski case, it is not the Appellate Division opinion but this Court's concurring opinion that provided the governing law on the sufficiency of the evidence under Rule 3:18-2.

That distinction was explained in the Appellate Division's decision in Abbamont, 314 N.J. Super. at 301, a decision affirmed by this Court in Abbamont v. Piscataway Township Board of Education, 163 N.J. 14 (1999).

In Abbamont, the plaintiff asserted claims against his former employer, a board of education, under the Conscientious Employee Protection Act (CEPA), N.J.S.A. 34:19-1 to -14. Abbamont v. Piscataway Twp. Bd. of Educ., 138 N.J. 405, 410 (1994). The Court equally divided on the question whether a plaintiff may seek punitive damages in a CEPA case against a public entity or public employee; three justices joined a concurring opinion allowing CEPA plaintiffs to pursue punitive damages in public-employment cases, id. at 425-33 (Handler, J., concurring), and three justices joined an opinion dissenting on that question, id. at 435-36 (Pollock, J., concurring in part and dissenting in part). The Court affirmed the Appellate Division's judgment remanding the case for trial. Id. at 413, 435.

Four years later, the Abbamont case returned to the Appellate Division. Abbamont, 314 N.J. Super. at 296-300. As the Appellate Division recounted,

14

the trial court on remand had dismissed the punitive damages claim notwithstanding the concurring opinion's mandate that the court send that claim to the jury, and the plaintiff appealed. Id. at 298-99.

In an opinion by Judge Skillman, the Appellate Division identified as its first task the determination whether its own prior opinion or the concurring opinion by three members of this Court provided the governing law for purposes of the Abbamont case. As the court explained,

> The threshold issue presented by this appeal is whether the controlling law following the remand is this court's majority opinion or Justice Handler's prevailing opinion in the evenly divided Supreme Court. This point is significant because although we may disagree with a decision of another panel of this court under some circumstances, we are obviously bound by a decision of the Supreme Court.

> [Id. at 300 (citation and footnote omitted).]

The Appellate Division acknowledged "that an affirmance by an equally divided court is not entitled to any precedential weight." Id. at 301. It stated, however, that the question was not whether the concurring opinion was precedential, but whether that opinion provided the governing law in the Abbamont case itself. As the court observed,

> [T]he issue before us is not whether the Supreme Court's decision should be accorded precedential weight in another case but rather whether it represents the controlling law in this case. This issue is governed by the 'law of the case' doctrine rather than the

15

> principle of stare decisis. Under this doctrine, a decision by an equally divided court becomes the law of the case, which is binding upon all lower courts, even though it may have no precedential weight in other cases.
>
> [Ibid. (citation omitted).]

The Appellate Division was "satisfied that Justice Handler's opinion represents the law of this case, and that it is binding upon both the trial court and this court." Id. at 303.

This Court unanimously affirmed the Appellate Division's decision in Abbamont, substantially for the reasons stated in Judge Skillman's opinion, summarizing the decision it affirmed as follows:

> Judge Skillman concluded that this Court's affirmance of Abbamont v. Piscataway Township Board of Education, 238 N.J. Super. 603 (App. Div. 1990), by an equally divided Court on the question whether a punitive damage claim under [CEPA] may be maintained against a public entity, 138 N.J. 405 (1994) (Abbamont I), constituted the controlling law under the 'law of the case' doctrine, and therefore was binding on the lower courts in this case. 314 N.J. Super. at 301-03.
>
> [Abbamont, 163 N.J. at 14.]

Thus, this Court confirmed that Justice Handler's concurring opinion in its prior decision in Abbamont -- a decision that the Appellate Division termed the "prevailing opinion" and this Court characterized as the "controlling law"

16

-- constituted the governing law for subsequent proceedings in the <u>Abbamont</u> case. <u>Ibid.</u>

That principle applies with equal force in a criminal setting. In <u>State v. Manzie</u>, a six-member Court equally divided on the question whether the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2, as the statute then provided, applied to a sentence for murder. 168 N.J. 113, 114-23 (2001) (Stein, Coleman, and Zazzali, JJ., concurring). Three justices joined a concurring opinion stating that NERA did not apply to sentences for murder, <u>id.</u> at 114-20, and three justices dissented, stating that NERA applied to sentences for murder, <u>id.</u> at 120-23 (Poritz, C.J., dissenting).

In <u>State v. Chavies</u>, 345 N.J. Super. 254, 276-77 (App. Div. 2001), the Appellate Division reiterated the holding of <u>Abbamont</u> that a three-to-three decision in the Supreme Court, while not precedential, constitutes the governing law for the case itself. There, the defendant cited the Appellate Division's decision and the Supreme Court's concurring opinion in <u>Manzie</u> as precedent for his argument that NERA did not apply to his sentence for murder. <u>Id.</u> at 276. Citing <u>Abbamont</u>, the Appellate Division in <u>Chavies</u> noted that in <u>Manzie</u>, "[o]ur Supreme Court affirmed in a per curiam opinion because the members of the Court were equally divided. The result is that the Supreme

17

Court's decision is binding in <u>Manzie</u> only, as it is essentially the law of that case." <u>Id.</u> at 277.

Thus, although the equally divided Supreme Court's concurring opinion in <u>Abbamont</u> was not precedential in subsequent cases, it provided the controlling law for the <u>Abbamont</u> case itself. <u>Abbamont</u>, 163 N.J. at 14. In <u>Manzie</u>, the equally divided Supreme Court's concurring opinion was not precedential authority for later decisions, but, in that case itself, the decision was "binding on Manzie" as the controlling law. <u>Chavies</u>, 345 N.J. Super. at 277. Here, the equally divided Court's concurring opinion is indeed not precedential, but it constitutes the controlling law that governs defendant's appeal.

As defendant concedes, the concurring opinion in this Court applied a standard to the evidence under <u>Rule</u> 3:18-2 that passes constitutional muster; as in the trial court's review of the motion, the concurrence considered defense evidence along with the State's evidence under <u>Reyes</u> and <u>Williams</u>. <u>Lodzinski</u>, 246 N.J. at 371-79. The concurring opinion thus accorded defendant the due process to which she was entitled. Defendant's claim that she has suffered a constitutional violation by virtue of the Appellate Division's decision is contrary to this Court's precedent concerning evenly divided decisions.

18

We thus dispute the notion that defendant has guided the Court to recognize "a failing in its prior handling of this matter," which requires "correction" in the form of a rehearing before a reconstituted Court. Ante at ___ (slip op. at 7) (order granting motion for reconsideration). As the record and this Court's precedent make clear, there was no due process violation, and no "failing" in this Court's determination of defendant's appeal.

Accordingly, we voted to deny defendant's motion for reconsideration.

### III.

Defendant's motion for reconsideration is governed by Rule 2:11-6(b). The first sentence of that provision states that "[a] motion for reconsideration will be granted only if it is moved by a justice or judge who concurred in the judgment or decision, and a majority of the court so determines." R. 2:11-6(b). As this Court has explained, "[a] motion for reconsideration requires, in addition to 'a majority of the court,' that a justice or judge who concurred in the original decision be part of the majority deciding to rehear the case." Abbott v. Burke, 206 N.J. 332, 374 (2011) (quoting R. 2:11-6(b)).

Our Appellate Division colleague's vote to grant reconsideration satisfies the second of Rule 2:11-6(b)'s two requirements -- that a majority of the Court favor reconsideration -- but not the Rule's first mandate. Because our Appellate Division colleague was not called upon to participate in the

19

original decision, and was assigned to join the Court only at this late stage, he is not "a justice or judge who concurred in the original decision." Abbott, 206 N.J. at 374; see also R. 2:11-6(b).

That leaves only the three members of the Court who dissented from the Court's decision. See Lodzinski, 246 N.J. at 384-402 (Albin, J., dissenting). By dissenting from the decision, our colleagues made it abundantly clear that they did not "concur[] in the judgment or decision," as Rule 2:11-6(b) requires. The terms "concur" and "dissent" convey opposing concepts. Compare Black's Law Dictionary 363 (11th ed. 2019) (defining "concur" to mean "[t]o agree; to consent"), with id. at 595 (defining a "dissent" as "[a] disagreement with a majority opinion, esp. among judges").

Our colleagues nevertheless postulate that "[a]ny member of the Court who joined the per curiam portion of our earlier decision may serve as the justice 'who concurred in the judgment or decision' on which reconsideration is sought, for purposes of Rule 2:11-6(b)." Ante at ___ (slip op. at 5) (order granting motion for reconsideration). Respectfully, our colleagues' reasoning, contrived to support defendant's application, is nonsensical. When this Court is equally divided, and therefore issues a per curiam opinion affirming an Appellate Division decision, the justices who dissented in that appeal have not

20

"concurred" in the per curiam decision; they dissent from it, because they would reverse the decision below.

To the extent that our colleagues rely on their agreement with the concurring opinion's statement of the standard governing post-verdict motions for a judgment of acquittal to declare themselves justices "who concurred in the judgment or decision" for purposes of Rule 2:11-6(b), their position contravenes the plain language of the Rule. Rule 2:11-6(b) does not authorize reconsideration merely because a dissenting justice or judge who concurs with one or more general legal principles stated in the challenged decision votes to reconsider; had the Court intended to impose such a low bar, it would have done so. To the contrary, the Rule does not authorize reconsideration unless at least one justice or judge who concurred with the challenged "judgment" or "decision" votes for rehearing. R. 2:11-6(b). In other words, reconsideration cannot be granted unless a justice or judge who voted in favor of the original result later supports rehearing. Ibid. The Rule is plainly intended to limit reconsideration to the settings in which the views of at least one member of the Court who previously supported the outcome have changed.

That has not occurred here. At every stage, our dissenting colleagues disputed the outcome of this appeal. Addressing a legal principle on which the concurring and dissenting opinions agreed, our colleagues made clear that their

21

adherence to that principle should not be mistaken for an agreement with the decision itself. They concurred "that our state's legal standard for a judgment of acquittal -- as opposed to how that standard was applied in this case -- does not offend due process." Lodzinski, 246 N.J. at 385 n.1 (Albin, J., dissenting). They found no common ground with the "judgment or decision" in this case.

Indeed, our colleagues described the Court's decision as a miscarriage of justice of historic proportions. They declared that "[i]n the modern annals of New Jersey legal history, as recorded in the New Jersey Reports and the Superior Court Reports, to my knowledge, no murder conviction has ever been upheld on such a dearth of evidence." Id. at 385. They stated that "[t]he checks and balances in our criminal justice system have failed at all levels. The decades-long search for the cause of the tragic death of young Timothy has led only to a miscarriage of justice." Ibid. They asserted that "[t]he sustaining of the murder conviction in this case on such a paucity of evidence has no parallel in this state, to my knowledge." Id. at 400. If our colleagues intended to convey the message that they "concurred in the judgment or decision," as Rule 2:11-6(b) requires, their choice of words was peculiar indeed.

Of course, our colleagues did not "concur" in the decision challenged here; they vehemently opposed it. No justice or judge who "concurred in the

judgment or decision" within the meaning of <u>Rule</u> 2:11-6(b) has voted in favor of reconsideration. Accordingly, the Order entered today does not comply with <u>Rule</u> 2:11-6(b).

IV.

For the foregoing reasons, we respectfully dissent.